Fee due

NAME: *Pyung Hwa Ryoo*

PRISON IDENTIFICATION/BOOKING NO.: *F88924*

ADDRESS OR PLACE OF CONFINEMENT: *P.O. Box 8800*

*Corcoran, CA 93212*

Note:   It is your responsibility to notify the Clerk of Court in writing of any
change of address. If represented by an attorney, provide his name,
address, telephone and facsimile numbers, and e-mail address.

$30

```
┌─────────────────────────────┐
│           FILED             │
│  CLERK, U.S. DISTRICT COURT │
│                             │
│        JUL 27 2012          │
│                             │
│ CENTRAL DISTRICT OF CALIFORNIA │
│ BY                  DEPUTY  │
└─────────────────────────────┘
```

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

FULL NAME (*Include name under which you were convicted*): *Pyung Hwa Ryoo*

Petitioner,

v.

NAME OF WARDEN, SUPERINTENDENT, JAILOR OR AUTHORIZED PERSON HAVING CUSTODY OF PETITIONER: *C. Gipson, Warden of CSP-Corcoran*

Respondent.

CASE NUMBER:

**CV12·6440 AG (MRW)**
(To be supplied by the Clerk of the United States District Court)

☐   **AMENDED**

## PETITION FOR WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY
28 U.S.C. § 2254

PLACE/COUNTY OF CONVICTION *Los Angeles*
PREVIOUSLY FILED, RELATED CASES IN THIS DISTRICT COURT
(*List by case number*)
CV _____
CV _____

## INSTRUCTIONS - PLEASE READ CAREFULLY

1.   To use this form, you must be a person who either is currently serving a sentence under a judgment against you in a California state court, or will be serving a sentence in the future under a judgment against you in a California state court. You are asking for relief from the conviction and/or the sentence. This form is your petition for relief.

2.   In this petition, you may challenge the judgment entered by only one California state court. If you want to challenge the judgment entered by a different California state court, you must file a separate petition.

3.   Make sure the form is typed or neatly handwritten. You must tell the truth and sign the form. If you make a false statement of a material fact, you may be prosecuted for perjury.

4.   Answer all the questions. You do not need to cite case law, but you do need to state the federal legal theory and operative facts in support of each ground. You may submit additional pages if necessary. If you do not fill out the form properly, you will be asked to submit additional or correct information. If you want to submit a legal brief or arguments, you may attach a separate memorandum.

5.   You must include in this petition all the grounds for relief from the conviction and/or sentence that you challenge. And you must state the facts that support each ground. If you fail to set forth all the grounds in this petition, you may be barred from presenting additional grounds at a later date.

5.   You must pay a fee of $5.00. If the fee is paid, your petition will be filed. If you cannot afford the fee, you may ask to proceed *in forma pauperis* (as a poor person). To do that, you must fill out and sign the declaration of the last two pages of the form. Also, you must have an authorized officer at the penal institution complete the certificate as to the amount of money and securities on deposit to your credit in any account at the institution. If your prison account exceeds $25.00, you must pay the filing fee.

When you have completed the form, send the original and two copies to the following address:

Clerk of the United States District Court for the Central District of California
United States Courthouse
ATTN: Intake/Docket Section
312 North Spring Street
Los Angeles, California 90012

```
┌─────────────────────────────┐
│          LODGED             │
│  CLERK, U.S. DISTRICT COURT │
│                             │
│        JUL 26 2012          │
│                             │
│ CENTRAL DISTRICT OF CALIFORNIA │
│ BY                  DEPUTY  │
└─────────────────────────────┘
```

PLEASE COMPLETE THE FOLLOWING: (*Check appropriate number*)

This petition concerns:
1. ☑ a conviction and/or sentence.
2. ☐ prison discipline.
3. ☐ a parole problem.
4. ☐ other.

## PETITION

1. Venue
   a. Place of detention  _California State Prison, Corcoran_
   b. Place of conviction and sentence  _Pomona Superior Court, County of Los Angeles_

2. Conviction on which the petition is based (*a separate petition must be filed for each conviction being attacked*).
   a. Nature of offenses involved (*include all counts*): _(1) Second degree murder ; (2) Attempted murder ; (3) Shooting at an occupied vehicle ; (4) Gun and Gang enhancements ._
   b. Penal or other code section or sections: _P.C. §§ : 187 ; 664-187 ; 246 ; 186.22 subd. (c) ; 12022.53 subsec. (b)(c)(I)(E) ._

   c. Case number: _Sup. Ct. Case No. #KA077372_
   d. Date of conviction: _October 18, 2007_
   e. Date of sentence: _February 25, 2008_
   f. Length of sentence on each count: _(1) 15 to life ; (2) life with parole ; (3) stayed P.C. §654 ; (4) 50 years to life._

   g. Plea (*check one*):
      ☑ Not guilty
      ☐ Guilty
      ☐ Nolo contendere

   h. Kind of trial (*check one*):
      ☑ Jury
      ☐ Judge only

3. Did you appeal to the California Court of Appeal from the judgment of conviction?   ☑ Yes ☐ No
   If so, give the following information for your appeal (*and attach a copy of the Court of Appeal decision if available*):
   a. Case number: _# B205699 (See Exh - A.)_
   b. Grounds raised (*list each*):
      (1) _Court's admission of involuntary statement violated due process_

(2) *Failure to allow jury to consider informant an accomplice was reversible error.*

(3) *Insufficient evidence to support gang enhancements.*

(4) _____

(5) _____

(6) _____

c.  Date of decision: *August 5, 2009.*

d.  Result *Appeal denied.*

4.  If you did appeal, did you also file a Petition for Review with the California Supreme Court of the Court of Appeal decision? ☑Yes ☐ No

If so give the following information *(and attach copies of the Petition for Review and the Supreme Court ruling if available)*:

a.  Case number: *# S176005   ( See Exh - B & Exh - C . )*

b.  Grounds raised *(list each)*:

(1) *Same as above in Court of Appeals.*

(2) *"                       "*

(3) *"                       "*

(4) _____

(5) _____

(6) _____

c.  Date of decision: *November 10, 2009*

d.  Result *Review denied.*

5.  If you did not appeal:

a.  State your reasons _____ *N/A* _____

b.  Did you seek permission to file a late appeal?   ☐ Yes  ☐ No

6.  Have you previously filed any habeas petitions in any state court with respect to this judgment of conviction?
☑Yes  ☐ No

If so, give the following information for each such petition *(use additional pages if necessary, and attach copies of the petitions and the rulings on the petitions if available)*:

---

PETITION FOR WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY (28 U.S.C § 2254)                Page 3 of 10

CV-69 (04/05)

a.  (1) Name of court: *Pomona Superior Court*

(2) Case number: *#KA077372*

(3) Date filed *(or if mailed, the date the petition was turned over to the prison authorities for mailing)*: *January 25, 2011.*

(4) Grounds raised *(list each)*:

(a) *( See Attachment "A" )*

(b) _____

(c) _____

(d) _____

(e) _____

(f) _____

(5) Date of decision: *February 7, 2011.*

(6) Result *Denied. ( See Exh-D.)*

(7) Was an evidentiary hearing held?   ☐ Yes   ☑ No

b.  (1) Name of court: *Court of Appeal, Second Appellate District, Division 4*

(2) Case number: *#B234416*

(3) Date filed *(or if mailed, the date the petition was turned over to the prison authorities for mailing)*: *July 10, 2011.*

(4) Grounds raised *(list each)*:

(a) *( See Attachment "A" )*

(b) _____

(c) _____

(d) _____

(e) _____

(f) _____

(5) Date of decision: *August 18, 2011.*

(6) Result *Denied. ( See Exh-E.)*

(7) Was an evidentiary hearing held?   ☐ Yes   ☑ No

c.  (1) Name of court: *California Supreme Court  ( See Exh-F.)*

(2) Case number: *#S199253*

(3) Date filed *(or if mailed, the date the petition was turned over to the prison authorities for mailing)*: *January 4, 2012*

(4) Grounds raised *(list each)*:

(a) *( See Attachment "A")*

(b) _____

# ATTACHMENT "A"

## Grounds Raised
### (#6a.(4) form CV-69)

a). Prosecutor elicited false testimony from prosecution witness and violated Petitioner's right to due process and a fair trial.

b). Prosecutor's use of altered and/or edited tape recording of witness statement violated Petitioner's right to due process.

c). Prosecutor withheld witness statements and police notes from Petitioner's attorney and violated Petitioner's right to due process.

d). Court's denial of Petitioner's motion for severance was error.

e). Court's denial of Petitioner's Pitchess motion was error.

f). Petitioner was denied due process when detective showed victims single photograph of Petitioner an hour before trial.

g). Court's refusal to hold a 402 hearing on Petitioner's motion to exclude the pretrial photographic and pending in-court identifications of the victims violated due process.

h). Petitioner was denied effective assistance of counsel when his trial attorney failed to investigate.

i). Petitioner was denied effective assistance of counsel on appeal when his appellate attorney failed to raise meritorious issues on appeal.

## Grounds Raised
### (#6b.(4) form CV-69)

(Same grounds as raised in Superior Court above...)

1

## Grounds Raised
### (#6c.(4) form CV-69.)

a). Prosecutor's use of altered and/or edited tape recording of witness statement violated due process.

b). Prosecutor elicited false testimony from prosecution witness and violated due process.

c). Court abused its discretion and errored in denying Petitioner's Pitchess motion.

d). Court abused its discretion and errored in refusing to afford Petitioner a hearing on his motion to exclude the pretrial photographic and in-court identification of victim.

e). Petitioner was denied effective assistance of counsel on appeal when his appellate attorney failed to raise meritorious issues on appeal.

2

(c) _____

(d) _____

(e) _____

(f) _____

(5) Date of decision: _July 11, 2012_____

(6) Result _denied.  ( See Exh - G.)_____

_____

(7) Was an evidentiary hearing held?   ☐ Yes   ☑ No

7.  For this petition, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States.  Attach additional pages if you have more than five grounds.  Summarize briefly the facts supporting each ground.  For example, if you are claiming ineffective assistance of counsel, you must state facts specifically setting forth what your attorney did or failed to do.

**CAUTION:**   *Exhaustion Requirement:*  In order to proceed in federal court, you must ordinarily first exhaust your state court remedies with respect to each ground on which you are requesting relief from the federal court.  This means that, prior to seeking relief from the federal court, you first must present all of your grounds to the California Supreme Court.

a.  Ground one: _____ *( See Attachment "B")* _____

(1) Supporting FACTS: _____ *( See Attachment "B")* _____

_____

_____

_____

(2) Did you raise this claim on direct appeal to the California Court of Appeal?   ☑ Yes   ☐ No

(3) Did you raise this claim in a Petition for Review to the California Supreme Court?   ☑ Yes   ☐ No

(4) Did you raise this claim in a habeas petition to the California Supreme Court?   ☐ Yes   ☑ No

b.  Ground two: _____ *( See Attachment "B")* _____

(1) Supporting FACTS: _____ *( See Attachment "B")* _____

_____

_____

_____

(2) Did you raise this claim on direct appeal to the California Court of Appeal?   ☑ Yes   ☐ No

(3) Did you raise this claim in a Petition for Review to the California Supreme Court?   ☑ Yes   ☐ No

(4) Did you raise this claim in a habeas petition to the California Supreme Court?   ☐ Yes   ☑ No

c.  Ground three: _____ *( See Attachment "B")* _____

_____

(1) Supporting FACTS: _____ *( See Attachment "B")* _____

_____

_____

_____

(2) Did you raise this claim on direct appeal to the California Court of Appeal?   ☑ Yes   ☐ No
(3) Did you raise this claim in a Petition for Review to the California Supreme Court?   ☑ Yes   ☐ No
(4) Did you raise this claim in a habeas petition to the California Supreme Court?   ☐ Yes   ☑ No

d.  Ground four: _____ *( See Attachment "B")* _____

_____

(1) Supporting FACTS: _____ *( See Attachment "B")* _____

_____

_____

_____

(2) Did you raise this claim on direct appeal to the California Court of Appeal?   ☑ Yes   ☐ No
(3) Did you raise this claim in a Petition for Review to the California Supreme Court?   ☐ Yes   ☑ No
(4) Did you raise this claim in a habeas petition to the California Supreme Court?   ☑ Yes   ☐ No

e.  Ground five: _____ *N/A* _____

_____

(1) Supporting FACTS: _____ *N/A* _____

_____

_____

_____

(2) Did you raise this claim on direct appeal to the California Court of Appeal?   ☐ Yes   ☐ No
(3) Did you raise this claim in a Petition for Review to the California Supreme Court?   ☐ Yes   ☐ No
(4) Did you raise this claim in a habeas petition to the California Supreme Court?   ☐ Yes   ☐ No

## ATTACHMENT "B"

### GROUNDS FOR RELIEF
(#7 Form CV-69.)

### Ground One

Petitioner was denied his Fourteenth Amendment right to due process and a fair trial because the trial court denied his motion to suppress Linora Lay's involuntary pretrial statement.

### Supporting Facts

1). Before trial, Petitioner moved to suppress Linora Lay's pretrial statement on the ground that the detectives coerced him into making an involuntary statement. (RT 817; CT 395.) After hearing the motion, the trial court acknowledged that it was a "close call", but denied the motion on the basis that under the totality of the circumstances the coercion was not such that it would affect the reliability of the evidence. (RT 820-821.) The trial court's failure to suppress Lay's involuntary statement violated Petitioner's Fourteenth Amendment right to due process and a fair trial.

2). Veteran Homicide Detectives Lowe and Peyton were the lead investigators in this case. They initially got the lead to Lay when they recieved a call from a detective from the Montebello Police Department on November 30, 2006. The detective told them that a suspect he had arrested for an armed robbery claimed to have information regarding the freeway shooting detectives Lowe and Peyton were investigating. (RT 1288.) This suspect,

1.

1  Brian Moon, was attempting to recieve a deal in his robbery case in excha-
2  nge for giving information to the detectives about the shooting. (RT
3  708.)

4      3). Detectives Lowe and Peyton interviewed Moon on December 1,
5  2006. (RT 1288.) At the time, Moon was their main suspect in the sho-
6  oting investigation due to the fact that the victims identified him as
7  the aggressive gang member who confronted them at the party, which
8  later lead to the shooting. (RT 625, 627, 655, 1287-1288.) Moon gave
9  the detectives a story implicating Justin Chung (Petitioner's co-
10  defendant), Lay, and Petitioner while denying any involvement
11  himself. (Exh-H.) Near the end of this interview, Detective
12  Lowe asked Moon whether he thinks Lay would "roll over" on Silent
13  (Chung) if they go "jam him up". Moon replied, "I think he's more
14  than, yeah." (Exh-H, lines 601-604.) With the information
15  they recieved from Moon, the "door opener" of their investigation
16  (RT 1287-1288.), the detectives went to "jam up" Lay. (RT 1286.)

17      4). Lay was interrogated by Detectives Lowe and Peyton on
18  December 8, 2006. (RT 961.) At the time, Lay was 16 years old
19  (RT 966.), and had been incarcerated in the California Youth Auth-
20  ority for a couple weeks for an unrelated charge. (RT 966-967,
21  1209, 1225, 1269.) He was alone with the two detectives in a small
22  room in a custodial facility. (RT 970-971, 1269.) The detectives
23  did not give him Miranda warnings, and secretly tape recorded the
24  interrogation. (Exh-I.)

25      5). The detectives began the interrogation by telling Lay that they
26  came to talk to him about a freeway shooting which occured on Aug-
27  ust 17, 2006 after Lay, his friends, and some guys thought to be

28                               2.

1  from Wah Ching attended a party. (Exh - I, pg.1.) Lay replied that

2  he did not remember attending the party. In response to further ques-

3  tions by the detectives, Lay said he didn't affiliate with any gang,

4  never heard of Giggles or Little Wicked, and didn't know anyone na-

5  med Loony. (Exh - I, pgs.1 - 4.)

6      6). Detective Lowe went on to tell Lay, "So after this party,

7  these guys took off and they left. Then some guys chased them.

8  There were some guys in the car. And a shooting happened. And they

9  drove away. The people in the car." Detective Peyton added that

10  the shooting occured on the 60 freeway. (Exh - I, pgs. 4-5.) Lay

11  said it did not sound familiar. Detective Lowe then asked Lay if

12  he was a "dumb guy" and "stupid". After Lay replied "no", Lowe

13  proceeded to tell Lay the following:

14      So this guy Silent, he gets in the car with somebody else.
   Silent ended up shooting at these guys. Okay? And there was some-
15  body else in that car. The other person in the car would be you.
   We're not saying that you shot. We're not saying that you were driv-
16  ing the car. But we can put you in the car. The problem is that
   you say you don't know any of these guys, but how come they know
17  you? And your cell phone? How come we have your cell phone records,
   and you called and talked to these guys? The problem is here, Linora,
18  is that we're not talking about some little case that you're gonna go
   off and you're gonna end up doing a couple of years for. We're
19  talking about the big leagues. Something really big. Somebody
   died. You understand? The person that died was a college student.
20  ... As far as we're concerned, you can be a witness, or you can
   be a suspect. It's up to you today to decide what it is you want to
   be. If you pulled the trigger, then obviously you can't be a witness.
21  See what I'm saying? If you're sitting in the car, and you did'nt
   have anything to do with the shooting, I would choose to be a wit-
22  ness. I sure wouldn't want to be a suspect in a murder. Another
   guy was hit in that car. Shot his face off, which is attempted mur-
23  der. So the shooter in this case has got attempted murder and
   murder on him. Me, personally, if I were you, all of 16 years
24  of age, I don't think I'd want to be in prison for the rest of my
   life. But, if you pulled that trigger, you can continue to say what
25  you're telling us right now. And we'll just go file a case. You won't
   be sitting here in the comfort of California Youth Authority. You'll be
26  sitting up in State Prison. 'Cause thats where these cases go. You un-
   derstand that?

27  (Exh - I, pgs. 5-6.)

28                              3.

7). Detective Lowe asked Lay if he understood "what we're trying to tell you." Lay said that he did. Detective Lowe then said that they already knew the answers to the questions and they just wanted to hear his responses. (Exh-I, pg.6.) The interrogation continued as follows:

Lowe:    We can put you at the party, and we can put you in the car. You have to make a decision. Like I said, were you the shooter? Were you the driver? Were you a passenger? We know the answers to these questions. But we need to hear the answers from you so we can decide what we need to do from here. Okay? The most important question? Shooter? Driver? Or passenger? Which one are you?

Lay:     Passenger.

Lowe:    Tell us what we need to do next then, okay?

Lay:     Well, what is that?

Lowe:    Huh?

Lay:     What is that?

Lowe:    Well, if you're a passenger, then in my opinion, in my partners opinion, you're a witness. Okay? If you're the shooter and the driver, you're a suspect. You understand? So tell us what to do next. If you're the passenger. And you're honestly and righteously the passenger, then we'd like you to explain to us what happened, what happened, who you, what you saw, what you did. Okay? You understand? Are you with me so far? Are you with me?

Lay:     Yeah.

(Exh-I, pg.7.)

8). Lay then admitted that he associated with HKB, that they called him Loony, and that he went to the party with some guys from HKB. He stated that he was just drinking at the party and that "they just called me out to the car and they just took off". Detective Lowe pressed Lay to tell them what happened after he got in the car. Lay stated that he "just fell asleep in the car." (Exh-I, pgs. 8-9.) The interrogation continued as follows:

Lowe:    You fell asleep in the car? Then what happened?

Lay:     I don't know.

Lowe:    That's not going to work. That's not going to work. People were in that car. So you need to be straight. You need to be straight. If you want us to treat this the way

4.

1  you're telling us, right? You're telling us you're the
2  passenger. You weren't the shooter and you weren't
   the driver. You got to be straight with us. We already
3  know the answers, but we need to hear it from you.
   Don't sit there and bullshit us. If you want to bullshit
   us, we'll get up and we'll go file the case against you
4  and your buddies, and you're gonna get wrapped up
   with them. That's how it's gonna be. I mean, I'm not
5  gonna bullshit you here. If you, if you're gonna start
   going in that direction, then it's gonna lead us to believe
   that you're not telling us the truth. From the information
6  that we have right now. Which means you're a suspect.
   Okay? You need to be straight.

7  (Exh-I, pgs. 9-10.)

8      9). Lay immediately asked Detective Lowe, "What happens to wit-
9  nesses?" Detective Lowe replied, "What happens to witnesses? We're
10 gonna get your statement. And we're gonna leave here. You're not
11 gonna be charged if your a witness. If you're a suspect, then
12 we're going a different route. If you're a suspect, then we're
13 gonna have to file charges against you." Lowe again gave Lay
14 the Hobson's choice: "Driver, shooter, or passenger? Which
15 one were you?" Lay responded, "passenger." (Exh-I, pg. 10.)

16     10). Detective Lowe asked Lay who was driving the car, and Lay
17 replied, "I don't really know him that well. I just met him." Lowe
18 then showed Lay a single photograph of Petitioner, and he iden-
19 tified Petitioner as the driver. (RT 1275; Exh-I, pg. 11.)

20     11). Lay then proceeded to tell his story incriminating Petition-
21 er and Chung in the shooting while painting himself as the pass-
22 enger who did and knew nothing, was merely a witness, just
23 as Detective Lowe suggested to him. (Exh-I.)

24     12). When the detectives were concluding the interrogation
25 and asking Lay to confirm whether he was sure of the inform-
26 ation he gave to them, Lay hesitated as if unsure, and the foll-
27 owing exchange took place:

28                              5.

| | | |
|---|---|---|
| 1 | Lay: | I'm not sure. |
| | Lowe: | What do you mean, you're not sure? |
| 2 | Lay: | I think, I think it could have been one of the big homeys in the car too. |
| 3 | Lowe: | There might have been four guys in the car? |
| | Lay: | Driving, or... |
| 4 | Lowe: | The white car or the black car? |
| | Lay: | The white car... |
| 5 | Lowe: | Okay. So it wasn't Daniel (Petitioner) driving? |
| | Lay: | I'm not, I'm not sure. I can't remember. |

(Exh-1, pg. 36.)

13). The prosecutor played Lay's tape recorded statement for the jury after Lay testified that he remembered going to the party but could not remember going home because he was drunk, and could not remember the statement he gave to Detective Lowe. (RT 956-957, 960.)

14). After the tape recorded statement was played, Lay testified that he felt threatened and nervous during the interrogation. (RT 1214, 1226-1227; CT 82, 84.) He confirmed that he testified at the preliminary hearing that he felt threatened with being charged with something very serious if he didn't make a statement. (RT 1267.) He understood Detective Lowe's suggestion that it was better to be a witness than a suspect. (RT 1216.) Detective Lowe suggested to him who the driver was by showing him a single photograph of Petitioner. (RT 1239, 1247.) He acted in his best interest by accepting these suggestions and repeating them to the detectives because he preferred to be a witness rather than a suspect. (RT 1231, 1259.)

15). In his closing argument to the jury, even the prosecutor admitted that the detectives had to force the statement out of Lay:

"... there were things that the detective did tell him because he wasn't willingly speaking. It was kind of like pulling teeth. The guy wouldn't open up his mouth." (RT 1910.)

6.

1  "So you can just see that slowly he let's it out, but he doesn't just let it out all at once. The detectives have to basically stick
2  a crowbar in his mouth and pry it open to get him to admit he was in the car and tell them who the driver was and tell them what
3  happened in the shooting. (RT 1914.)

4  16). Petitioner was prejudiced by the admission of Lay's involuntary

5  and coerced statement into his trial because that was the sole evidence

6  the prosecutor relied upon to connect Petitioner to the shooting. (RT

7  2123-2133.)

8

9  <u>Supporting Cases and Authorities</u>

10  1). Pyle v. Kansas (1942) 317 U.S. 213, 214 - 216.

11  2). Blackburn v. Alabama (1960) 361 U.S. 199, 206 - 207.

12  3). Colombe v. Connecticut (1961) 367 U.S. 568, 601 - 602.

13  4). LaFrance v. Bohlinger (1st. Cir. 1974) 499 F.2d 29, 34.

14  5). Schneckloth v. Bustamonte (1961) 412 U.S. 218, 226.

15  6). Haley v. Ohio (1948) 332 U.S. 596, 599 - 601.

16  7). Miranda v. Arizona (1966) 384 U.S. 444-445, 458, 467.

17  8). People v. McClary (1977) 20 Cal.3d 229-230.

18  9). People v. Lee (2002) 95 Cal. App. 4th 772, 781.

19  10). Chapman v. California (1967) 386 U.S. 18, 23.

20

21

22  <u>Ground Two</u>

23  Petitioner was denied his Fourteenth Amendment

24  right to due process and a fair trial because the

25  trial court denied his request to instruct the

26  jury to determine whether Brian Moon was an

27  accomplice in fact.

28  7.

<u>Supporting Facts</u>

1)   During trial, Petitioner requested that the trial court instruct the jury on the law pertaining to accomplice testimony with respect to both Linora Lay and Brian Moon.   The defense's argument was that, although evidence did not establish that Lay and Moon were accomplices as a matter of law, the evidence was sufficient to send the issue to the jury for a determination as to whether they were accomplices in fact. (RT 1602, 1604, 1802-1809.)   The court granted the request as to Lay but denied it as to Moon on the ground that "his affirmative acts are too attenuated from the charges in this case." (RT 1808-1809.)   The trial court errored by denying Petitioner's request as to Moon because there was sufficient evidence to send the issue to the jury.   This violated Petitioner's Fourteenth Amendment right to due process and a fair trial.

2).   The four surviving victims of the freeway shooting, Calvin Yao, Kelvin You, Rex Wu, and Xu Zhang, all stated that they, along with their friend Eric Huang, attended a party in Rowland Heights on the night of August 17, 2006. (RT 625.)   Within minutes of arriving at the party, they were confronted by two individuals described as "Korean gang-member types", who were later identified as Brian Moon and Adam Pak. (RT 626, 629-630, 633, 655, 743, 904-905, 920.)   A group of gang-member types stood near Moon and Pak. (RT 655, 681, 906.)

3).   Moon asked the victims where they were from, an inquiry about their gang affiliation.   The victims stated that they did not belong to a gang. (RT 627-628, 657, 681-682, 907-908.)   Moon aggressively accused them of being Wah Ching gang members

8.

1  and asked repeatedly what they were doing at the party. (RT 628 -

2  629, 908.) Moon appeared very intoxicated and was very aggressive.

3  (RT 656-657, 907.) Feeling uncomfortable with the hostility gener-

4  ated by Moon and his friends, the victims decided to leave the par-

5  ty to avoid further trouble, even though they had only been at

6  the party for ten minutes. (RT 633, 657-658, 682, 908.)

7      4). Victim Kelvin You testified that as he and his friends were

8  leaving the party, he saw Moon and his friends follow them out to

9  the front porch and huddle together talking amongst themselves while

10  watching You and his friends get in Calvin Yao's car to leave. (RT

11  909.) Once they got in the car, they drove to the 60 freeway, and

12  upon entering it, a vehicle drove past them from behind shooting

13  bullets into their car. (RT 635-636, 637, 658-659, 683-684, 931.)

14  The shooting occured five to ten minutes after they left the party.

15  (RT 633, 657-658, 682, 908.)

16      5). On November 30, 2006, Moon was arrested by the Montebe-

17  llo Police Department for an armed robbery. (RT 694.) He told the

18  Montebello detectives that he was willing to give information re-

19  garding the freeway shooting which occured a few months before

20  his arrest, in exchange for a deal on his robbery case. (RT 694,

21  707.)   The detectives promised to see what they can do (RT 700.),

22  and then contacted Detectives Lowe and Peyton who were leading

23  the murder investigation.

24      6). Detectives Lowe and Peyton interviewed Moon on Decem-

25  ber 1, 2006.   The detectives began the interview by telling Moon

26  that they already had information that he was involved in the shoot-

27  ing. (Exh-H, pg.1.) Moon denied that he was involved, and went

28                          9.

1   on to give them a story implicating Chung, Lay, and Petitioner in

2   the shooting while denying any type of involvement himself. (Exh-H.)

3         7). During this interview, Moon told the detectives, among

4   other things, the following:

5            a). That when the "guys from Wah Ching" came to the party,

6   "we all were talking about what we were going to do." (Exh-H, pg.1)

7            b). That the murder weapon was a Smith & Wesson .357

8   magnum, silver barreled with a wooden grip, that looked like "pretty

9   nice stuff." (Exh-H, pgs. 3, 16, 27-28.)

10           c). That he did not "hit up" the victims at the party, and that

11  he just walked up to them, said "what's up" and shook their hands.

12  (Exh-H, pgs. 13.)

13           d). That he had walked out to a "little area" in front of the

14  house after the victims left the party and saw "Silent and Gommy"

15  run down the corner. (Exh-H, pg. 14.) He asked Adam Pak, "what's

16  going down?", and Pak responded "they're gonna go get them."

17  (Exh-H, pg. 14.)

18           e). That after the shooting, Silent called him and report-

19  ed to him, "we got 'em on the freeway" and kept asking him "what

20  should I do? What should I do?" (Exh-H, pgs. 15-16, 19-20.)

21  Moon later acknowledged that this phonecall did not come as a

22  surprise for him. (RT 731.)

23           f). That he was jumped into HKB when he was 11 years old.

24  (Exh-H, pgs. 22-23.)

25           g). That he was right under Pak in the hierchy of HKB and

26  can tell Chung, Lay, and Petitioner what to do. (Exh-H, pg. 27.)

27         8). The prosecution's gang expert testified at Petitioner's trial

28                                    10.

1  that Moon stated that he was a shotcaller of HKB. (RT 1332-1333, 1345.)

2  Both Lay and Detective Lowe corroborated this. (RT 1253, 1295.)

3  The gang expert further testified that a "shotcaller" is a leader of

4  the gang and orders younger gang members to "put in work" for the

5  gang by committing crimes. (RT 1332-1333, 1345.)  The gang expert

6  testified that Petitioner, Chung, and Lay were "youngsters" of

7  HKB. (RT 1332, 1358, 1363.)

8         9). In his rebuttal argument to the jury, the prosecutor argued

9  that Moon did not commit the shooting directly, but acknowledged that

10  he may have ordered it. (RT 2152.)

11        10). Petitioner was prejudiced by the trial court's failure to instruct

12  the jury on this matter because the prosecution's entire case against

13  him rested on Moon and Lay. Had the jury been correctly instructed

14  on the law pertaining to accomplice testimony as to both Moon and Lay,

15  the jury would not have been able to corroborate their testimonies with

16  with eachothers.  Since there were no other evidence presented at

17  trial by the prosecution to corroborate the pretrial statements and

18  testimonies of Moon and Lay, proof beyond a reasonable doubt could

19  not have been found.  The error is structural, requiring reversal

20  per se, and if not structural, the error is subject to harmless error

21  analysis under Chapman v. California.

22

23                    <u>Supporting Cases and Authorities</u>

24    1). Cool v. United States (1972) 409 U.S. 100, 104.

25    2). Sullivan v. Louisiana (1993) 508 U.S. 281-282.

26    3). Carella v. California (1983) 491 U.S. 263.

27    4). Hicks v. Oklahoma (1980) 447 U.S. 343, 346.

28                              11.

5). Chapman v. California (1967) 386 U.S. 23

6). McMillan v. Pennsylvania (1986) 477 U.S. 79, 85

7). Neder v. United States (1999) 527 U.S. 1

8). Penal Code sections 1111 & 31.

9). CALCRIM 334

10). People v. McLain (1988) 46 Cal. 3d 97, 106.

11). People v. Cook (1998) 61 Cal. App. 4th 1364, 1369.

12). People v. Jones (1964) 2 Cal. App. 2d 74, 94.


## Ground Three

Petitioner was denied his Fourteenth Amendment
right to due process and a fair trial because there
was insufficient evidence to prove the gang enh-
ancement beyond a reasonable doubt.


## Supporting Facts

1). To prove the "primary activities" element of criminal street
gang enhancement (PC §186.22, subd.(b)(1)), the prosecution relied
specifically on its gang expert's testimony that HKB's primary activ-
ities included assault and kidnapping.  The prosecutor argued this
point to the jury in his closing argument (RT 1899-1900.), and the
trial court instructed the jury that the criminal street gang allegation
required proof, among other things, that the group had "as one or
more of its primary activities the commission of assault or kidnapping."
(RT 1880; CT 808.)   The trial court also instructed the jury that it
could consider the charged crimes as one of the group's primary act-

12.

ivities. ( RT 1881 ; CT 808.)   The evidence is legally insufficient to prove the "primary activities" element of the criminal street gang enhancement, and therefore the enhancement must be stricken.

2). To prove the "primary activities" element of the gang enhancement, the prosecutor asked the gang expert one direct question about the issue and elicited one direct response:

> Q    Through your experience and in your conversations with other law enforcement, in your opinion, what are HKB's primary activities?
>
> A    I'm aware of the ones I've been involved with which is kidnapping, and assault with a deadly weapon, and possession of marijuana, and possession of marijuana for sales.  I've also done some investigation of Hangook Boys as far as other crimes they have committed over the last six or seven years.

(RT 1320)

3). The gang expert did not explain this testimony except to say that he had had "direct contact" with about seven admitted HKB gang members and two HKB associates, and the "five in 2001 were my partner's case, it was kidnapping and assault with a deadly weapon and four of my own during a traffic stop with an arrest for possession of marijuana and marijuana for sales." (RT 1319.)

4). To prove the predicate act element of the gang enhancement, the prosecutor introduced a certified minute order showing that John An, an admitted HKB gang member, was convicted for committing misdemeanor assault on March 4, 2005. (RT 1321-1322; Supp. CT 2-3.)

5). In a subsequent discussion between the trial court and counsel, all agreed that the gang expert relied upon arrests, not convictions, to support his opinion on the gang's primary activities.  The prosecutor acknowledged the point by stating, "As it relates to prim-

13.

1   ary activities, Nanquil (gang expert) just listed assault and kidnap-

2   pping. He didn't get into convictions. The conviction part was patt-

3   ern of gang criminal conduct, separate elements." (RT 1883.) Peti-

4   tioner's counsel added, "What Nanquil said was that he knew a

5   fellow officer who stopped a vehicle with four individuals who were

6   arrested for assault and kidnapping; so it was based on that conduct.

7   There is no indication they were ever charged, prosecuted, or con-

8   victed of that crime." (RT 1883.) Petitioner's counsel went on to

9   state that "there is no evidence that anybody from HKB was ever

10   convicted of kidnapping, only that a vehicle was stopped where

11   people were suspected of it. That's what the evidence is." (RT

12   1883.) The trial court replied, "I don't disagree that's what

13   the evidence is." (RT 1883-1884.)

14

15              <u>Supporting Cases and Authorities</u>

16      1). Jackson v. Virginia (1979) 443 U.S. 307, 319.

17      2). Apprendi v. New Jersey (2000) 530 U.S. 466, 490.

18      3). Burks v. United States (1978) 437 U.S. 1, 11.

19      4). Penal Code section 186.22, subd. (b)(1).

20      5). People v. Sengpadychith (2001) 26 Cal. 4th 316, 323

21      6). People v. Gardeley (1996) 14 Cal. 4th 605, 609-610.

22      7). In re Leland D. (1990) 223 Cal. App. 3d 251, 258.

23

24

25              <u>Ground Four</u>

26      Petitioner was denied his Fourteenth Amendment

27      right to due process and a fair trial when the

28                      14.

1   prosecutor deliberately elicited false testimony

2   from the chief investigating detective in the case

3   during Petitioner's trial.

4

5   <u>Supporting Facts</u>

6   1). On December 8, 2006, Detectives Lowe and Peyton interrogated

7   16 year old Linora Lay. (RT 961.)

8   2). During this interrogation, Lay initially identified a single photo-

9   graph of Petitioner as the driver of the suspect car during the freeway

10   shooting. (RT 1275; Exh-I, pg. 11.)   But near the end of this interroga-

11   tion, Lay clarified his earlier identification of Petitioner as the driv-

12   er and stated that he was actually not sure:

13   Lay:      I remember getting in a black car too...

14   Lowe:     Okay. That was during the chase? Or was that before
         the chase? Be sure of. You were in the white car when
15       they passed, and they did the shooting on, on the car
         right? The guy that shot was silent. And the guy that
16       was driving was Daniel (Petitioner), right? Those
         are the things you are sure of?

17   Lay:      I'm not sure.
    Lowe:     What do you mean you're not sure?
18   Lay:      I think, I think it could have been one of the big homeys
         in the car too.
19   Lowe:     There might have been four guys in the car?
    Lay:      Driving, or...
20   Lowe:     The white car or black car?
    Lay:      The white car.
21   Lowe:     Okay. So it wasn't Daniel driving?
    Lay:      I'm not, I'm not sure. I can't remember.

22   (Exh-I, pg. 36.)

23   3). Lay later testified at Petitioner's trial that during his interroga-

24   tion, Detective Lowe suggested to him who the driver was by showing him

25   a single photograph of Petitioner. (RT 1239, 1247.)   He further testif-

26   ied that he felt threatened with being charged with something very ser-

27   ious if he didn't make a statement (RT 1267.), and acted in his best inter-

28   15.

1  est by accepting those suggestions and repeating them to the detectives

2  because he preferred to be a witness rather than a suspect. (RT 1231,

3  1259.)

4      4). While conducting direct examination of Detective Lowe during

5  trial, the prosecutor asked him if he had any problems recording the inter-

6  rogation of Lay. Detective Lowe replied that he had, and explained that

7  a "pause button" on the tape recorder had been accidentally pushed duri-

8  ng the interrogation which caused the tape to "pause" at times and not

9  pick up everything that was said in the interrogation. (RT 1273-1274,

10  1276.)

11      5). The prosecutor then asked Detective Lowe a series of questions

12  about what was said during the portions of the tape where information

13  was missing due to the "pause button" (RT 1275-1278.), which he ulti-

14  mately used to lead up to this question, eliciting the false testimony

15  from Detective Lowe:

16  Prosecutor: Do you recall what he (Lay) was saying that made
             you respond the way you did on line 915?

17  Lowe:      Yes. I believe -- I can't remember now, but I believe,
             "You're going to take care of Daniel." What it was is he

18             was saying that he was afraid of Daniel Ryoo, and he
             was afraid to identify him.

19  (RT 1278.)

20      6). There is substantial evidence that shows this testimony elicited

21  from Detective Lowe is false:

22      a). This alleged statement Lay made (unless otherwise stated,

23  the "alleged statement" will be referred to the statement Detective Lowe

24  testified that Lay made regarding his fear of Petitioner.) was never men-

25  tioned or disclosed to the Petitioner before trial.

26      b). The interrogation of Lay was tape recorded and transcri-

27  bed, and nowhere on the tape or transcript contains this alleged sta-

28                              16.

1   tement. (Exh-I.)

2          c). Detectives Lowe and Peyton both took handwritten notes

3   during this interrogation, however none of those notes mention anything

4   about this alleged statement. (RT 1309.)

5          d). Detective Lowe wrote a report regarding this interroga-

6   tion after listening to the tape recording of it, but in spite of know-

7   ing that Lay's alleged statement did not make it on the tape recording,

8   he never mentioned it in his report. (RT 1308-1309.)

9          e). Detective Peyton testified at Petitioner's preliminary

10   hearing.  Although moments before he testified, he witnessed Lay get

11   on the witness stand and recant all the statements he made during the

12   interrogation and also tell the court that he basically participated in

13   the interrogation because he felt threatened by the detectives, Detec-

14   tive Peyton never mentioned anything about Lay's alleged statement of

15   his fear to identify Petitioner. (Preliminary Hearing Transcript, pgs.

16   84, 86-98.)

17          f). Lay testified at Petitioner's trial that he was not afraid

18   of Petitioner. (RT 1266-1267.)

19        7). Petitioner further asserts that the prosecutor violated mandatory

20   discovery rules by failing to disclose this alleged statement of Lay bef-

21   ore trial, and the trial court's failure to sustain Petitioner's trial

22   counsel's objection to Lowe's testimony regarding this alleged statement

23   was error. (RT 1278-1279.)  The inclusion of this prejudicial testimony

24   into Petitioner's trial violated his Fourteenth Amendment right to due

25   process and a fair trial.

26        8). Petitioner was severely prejudiced from Lowe's false testimony

27   for the following reasons:

28                      17.

a). The tape recording of Lay's interrogation was the key evidence the prosecution relied upon to connect Petitioner to the crime. At trial, Lay recanted his previous statement to the detectives and this tape recording was played to the jury to impeach his credibility. (RT 953 - 954, 956, 960 - 961, 1272, 2123 - 2133.)

b). In his closing argument to the jury, the prosecutor emphasized that the only reason Lay told the detectives that he was not sure if Petitioner was the driver of the suspect car at the end of the interrogation, was because he was scared of Petitioner, and scared to "snitch" on him. (RT 1916.)

9). Petitioner's appellate attorney was ineffective by failing to raise this issue on his appeal.

### Supporting Cases and Authorities

1). Napue v. Illinois (1959) 360 U.S. 264, 269.

2). Mooney v. Holohan (1935) 294 U.S. 103, 112.

3). United States v. Wallach (2d. Cir. 1991) 935 F.2d. 445, 456.

4). Alcorta v. Texas (1957) 355 U.S. 28

5). Blumberg v. Garcia (C.D. Cal. 2010) 687 F.Supp.2d 1074.

6). Smith v. Robbins (2000) 528 U.S. 259.

### Prayer for Relief

Petitioner is without remedy save by the Great Writ of Habeas Corpus.

WHEREFORE, Petitioner prays that this honorable court:

1). Issue an Order to Show Cause;

18.

2). Declare the rights of the parties;

3). Appoint counsel for Petitioner;

4). Issue a Writ of Habeas Corpus vacating the judgement of conviction with instructions to grant Petitioner a new trial;

5). Grant any other further relief the court deems proper.

<u>Verification</u>

I, Pyung Hwa Ryoo, hereby state:

I am the Petitioner in this action. I have read the foregoing Petition for Writ of Habeas Corpus, and the facts stated therein are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct. Executed at CSP-Corcoran, on _____ 7/23/12.

Pyung Hwa Ryoo

In Propria Persona.

19.

8. If any of the grounds listed in paragraph 7 were not previously presented to the California Supreme Court, state briefly which grounds were not presented, and give your reasons: _____ N/A _____

_____

_____

9. Have you previously filed any habeas petitions in any federal court with respect to this judgment of conviction?

☐ Yes  ☑ No

If so, give the following information for each such petition *(use additional pages if necessary, and attach copies of the petitions and the rulings on the petitions if available)*:

a.  (1) Name of court: _____

(2) Case number: _____

(3) Date filed *(or if mailed, the date the petition was turned over to the prison authorities for mailing)*: _____

(4) Grounds raised *(list each)*:

(a) _____

(b) _____

(c) _____

(d) _____

(e) _____

(f) _____

(5) Date of decision: _____

(6) Result _____

_____

(7) Was an evidentiary hearing held?   ☐ Yes  ☐ No

b.  (1) Name of court: _____

(2) Case number: _____

(3) Date filed *(or if mailed, the date the petition was turned over to the prison authorities for mailing)*: _____

(4) Grounds raised *(list each)*:

(a) _____

(b) _____

(c) _____

(d) _____

(e) _____

(f) _____

(5) Date of decision: _____

(6) Result _____

(7) Was an evidentiary hearing held?   ☐ Yes   ☐ No

10. Do you have any petitions now pending (i.e., filed but not yet decided) in any state or federal court with respect to this judgment of conviction?   ☐ Yes   ☒ No

If so, give the following information *(and attach a copy of the petition if available)*:

(1) Name of court: _____

(2) Case number: _____

(3) Date filed *(or if mailed, the date the petition was turned over to the prison authorities for mailing)*: _____

(4) Grounds raised *(list each)*:

    (a) _____

    (b) _____

    (c) _____

    (d) _____

    (e) _____

    (f) _____

11. Are you presently represented by counsel?   ☐ Yes   ☒ No

If so, provide name, address and telephone number: _____

_____

_____

WHEREFORE, petitioner prays that the Court grant petitioner relief to which he may be entitled in this proceeding.

_____
*Signature of Attorney (if any)*

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct.

Executed on ___7/23/12___
              *Date*

_____
              *Signature of Petitioner*

A Corcoran State Prison
P.o. Box 8800,
Corcoran, CA 93212



2254

JUL 26 2012

Clerk of the United States District Court
for the Central District of California
United States Courthouse
ATTN: Intake/Docket Section
312 North Spring Street
Los Angeles, CA 90012.



Confidential

* Legal Mail



**TERRY NAFISI**

District Court Executive
and Clerk of Court

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION**
312 North Spring Street, Room G-8  Los
Angeles, CA  90012
Tel: (213) 894-3535

Friday, July 27, 2012

**SOUTHERN DIVISION**
411 West Fourth Street, Suite 1053
Santa Ana, CA 92701-4516
(714) 338-4570

**EASTERN DIVISION**
3470 Twelfth Street, Room 134
Riverside, CA 92501
(951) 328-4450

PYUNG HWA RYOO   F88924
CORCORAN STATE PRISON
P.O. BOX 8800
CORCORAN, CA 93212

Dear Sir/Madam:

Your petition has been filed and assigned civil case number      CV12- 6440 AG (MRW)

Upon the submission of your petition, it was noted that the following discrepancies exist:

[X] 1. You did not pay the appropriate filing fee of $5.00.  Submit a cashier's check, certified bank
check, business or corporate check, government issued check, or money order drawn on a major
American bank or the United States Postal Service payable to 'Clerk U.S. District Court'.  If
you are unable to pay the entire filing fee at this time, you must sign and complete this
court's Prisoner's Declaration In Support of Request to Proceed In Forma Pauperis in its
entirety.   The Clerk's Office will also accept credit cards (Mastercard, Visa, Discover,
American Express) for filing fees and miscellaneous fees.  Credit card payments may be made at
all payment windows where receipts are issued.

[X] 2. The Declaration in Support of Request to Proceed in Forma Pauperis is insufficient because:

[ ]  (a) You did not sign your Declaration in Support of Request to Proceed in Forma Pauperis.

[ ]  (b) Your Declaration in Support of Request to Proceed in Forma Pauperis was not completed in its
entirety.

[X]  (c) You did not submit a Certificate of Prisoner's Funds completed and signed by an authorized
officer at the prison.

[ ]  (d) You did not use the correct form.  You must submit this court's current Declaration in
Support of Request to Proceed in Forma Pauperis.

[ ]  (e) Other: _____

Enclosed you will find this court's current Prisoner's Declaration in Support of Request to Proceed in
Forma Pauperis, which includes a Certificate of Funds in Prisoner's Account Form.

Sincerely,

Clerk, U.S. District Court

SBOURGEO

By: _____

Deputy Clerk

CV-111  (07/06)              **NOTICE re: DISCREPANCIES FOR FILING OF HABEAS CORPUS PETITION**



**TERRY NAFISI**
District Court Executive
and Clerk of Court

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**
312 North Spring Street, Room G-8 Los
Angeles, CA 90012
Tel: (213) 894-7984

**SOUTHERN DIVISION**
411 West Fourth Street, Suite 1053
Santa Ana, CA 92701-4516
(714) 338-4570

**EASTERN DIVISION**
3470 Twelfth Street, Room 134
Riverside, CA 92501
(951) 328-4450

Friday, July 27, 2012

PYUNG HWA RYOO   F88924
CORCORAN STATE PRISON
P.O. BOX 8800
CORCORAN, CA 93212

Dear Sir/Madam:

A [X] Petition for Writ of Habeas Corpus was filed today on your behalf and assigned civil case number
CV12- 6440 AG (MRW)

A [ ] Motion pursuant to Title 28, United States Code, Section 2255, was filed today in criminal case
number _____ and also assigned the civil case number _____

A [ ] Motion for Extension of Time to File Habeas Corpus Petition was filed today on your behalf and
assigned civil case number _____

Please refer to these case numbers in all future communications.

Please Address all correspondence to the attention of the Courtroom Deputy for:
[ ] District Court Judge _____
[X] Magistrate Judge   **Michael Wilner** _____
at the following address:

[X] U.S. District Court
312 N. Spring Street
Civil Section, Room G-8
Los Angeles, CA 90012

[ ] Ronald Reagan Federal
Building and U.S. Courthouse
411 West Fourth St., Suite 1053
Santa Ana, CA 92701-4516

[ ] U.S. District Court
3470 Twelfth Street
Room 134
Riverside, CA 92501

The Court must be notified within fifteen (15) days of any address change.  If mail directed to your
address of record is returned undelivered by the Post Office, and if the Court and opposing counsel
are not notified in writing within fifteen (15) days thereafter of your current address, the Court may
dismiss the case with or without prejudice for want of prosecution.

Very truly yours,

Clerk, U.S. District Court

By:   SBOURGEO _____
Deputy Clerk